**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Bush, | No. CV-14-00323-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Robert Lee Pommer, et al., | |
| Defendants. | |

Pending before the Court are nearly a half-dozen motions filed by Plaintiff: Motion for Summary Judgment (Doc. 88); Motion to Compel Defendants' Disclosure (Doc. 94); Motion Regarding Sufficiency of an Answer; In the Alternative, A Plea: Nul Tiel Record (Doc. 95); Motion to Censure (Doc. 110); and Motion for Default Judgment (Doc. 111). Defendants' responded to each motion and filed a Cross-Motion for Summary Judgment (Doc. 101). The Court now rules on the motions.

## I.    Background

Defendants and Plaintiff own properties located in La Paz County, Arizona. (Doc. 102-1 at 6). The only access to both Defendants' and Plaintiff's properties is via a right-of-way easement access road off State Highway 95 ("Access Road") that is owned by the Arizona Department of Transportation ("ADOT"). (*Id.* at 22; Doc. 101 at 2). The Access Road travels uphill from Highway 95, with Defendants' property situated downhill and south of Plaintiff's property. (Doc. 102-1 at 8). Other parties using parcels near Plaintiff's and Defendants' properties use the Access Road to reach those parcels

and have apparently done so without issue throughout the relevant time period in this case. (Doc. 102 at 7).

On October 26, 2006, ADOT issued Permit #99177 authorizing Plaintiff to use the Access Road "to access [his] property" and to construct a "15' wall to protect rocks from falling on Hwy 95." (Doc. 102-1 at 43). According to the Permit, construction was "authorized only" between October 24, 2006 and January 24, 2007. (*Id.*)

The Access Road has previously been a cause of conflict between the parties. In 2005, Plaintiff filed a lawsuit against Defendants in the Superior Court of Arizona in La Paz County alleging that a twelve foot embankment built by Defendants prevented Plaintiff from accessing his property. (*Id.* at 8). The case ultimately settled in January 2011. (*Id.* at 45–49). According to the settlement agreement, Plaintiff was "solely responsible for costs of any said construction to finish the retainage and driveway which is presently constructed on the ADOT right-of-way." (*Id.* at 47). The agreement also served as a settlement of all existing disputes between Plaintiff and Defendants, "whether known or unknown," as of January 6, 2011. (*Id.*) The agreement contained another provision stating that "[a]ny redress of grievances involving violation of this agreement shall be solely referred to this Court for resolution." (*Id.* at 46–47).

In August 2012, a monsoon struck La Paz County. (Doc. 102 at 5). On September 20, 2012, Defendants hired Nelson Digging to repair damage to the lower section of the Access Road caused by the rainwater. (*Id.*) Defendants contacted ADOT on September 21, 2012, requesting asphalt millings to prevent further erosion on the Access Road. (Doc. 89 at 12). ADOT delivered the asphalt millings on October 1, 2012. (Doc. 102 at 6). Nelson Digging spread the millings over the lower section of the Access Road the following day. (*Id.*)

On February 5, 2013, Defendants filed a case in the La Paz County Superior Court to enforce the settlement agreement against Plaintiff. (Doc. 101 at 4). Specifically, Defendants alleged that Plaintiff violated the settlement agreement by not repairing or maintaining the Access Road and by harassing Defendants by "deliberately removing a

property stake." (Doc. 104-1 at 11). The superior court initially awarded Defendants the costs of smoothing the Access Road after it concluded that Plaintiff violated the agreement by failing to finish the retainage and driveway on the Access Road. (Doc. 102-1 at 69). The court also found that "Defendants acted in a reasonable manner . . . to try to minimize any future erosion of the [Access Road]." (*Id.*) The court later vacated its order after finding that Plaintiff had not been served with notice of the hearing. (*Id.* at 73).

## II.    Motions Regarding Discovery Disputes

The Court first turns to Plaintiff's motions concerning discovery issues because if granted, additional evidence could be before the Court, potentially affecting the parties' summary judgment motions.

### A.    Motion to Compel Defendants' Disclosure (Doc. 94)

Plaintiff filed a Motion to Compel Defendants' Disclosure on March 30, 2015. (Doc. 94). In this motion, Plaintiff requests the Court to compel Defendants to answer three questions concerning an alleged "ADOT Demand" involving a permit application. (*Id.*) Initially, because Plaintiff is disputing the adequacy of Defendants' response to a discovery request, this motion involves a discovery dispute. Consequently, Plaintiff's motion stands in direct violation of the following section of the Court's Rule 16 Scheduling Order:

> **[D]iscovery motions are prohibited**. <u>In the event of a discovery dispute, the parties shall jointly contact the Court via conference call to request a telephonic conference.</u> The parties shall not contact the Court regarding a discovery dispute unless they have been unable to resolve the dispute themselves after personal consultation and sincere efforts to do so, **and they are prepared to state to the court that they agree what is in dispute.** The parties shall not file any written materials related to a discovery dispute without express leave of Court.

(Doc. 45 at 4). Plaintiff never contacted the Court regarding this dispute, and for this reason alone the Local Rules of Civil Procedure for the District of Arizona ("LRCiv") permit the Court to deny the motion. *See* LRCiv 7.2(i)-(j). Further, Plaintiff did not comply with Federal Rule of Civil Procedure ("Rule") 37(a)(1)'s requirement that he provide the Court with a certification avowing a good faith attempt to resolve this dispute

with Defendants prior to filing the motion. Finally, the Court would deny Plaintiff's motion even if it were to reach the merits because the motion demands information concerning issues that were undisputedly settled by the parties' 2011 agreement. All such information, therefore, is irrelevant to Plaintiff's allegations in the present case. For these three reasons, the Court will deny Plaintiff's motion.

### B.      Motion Regarding Sufficiency of an Answer; In the Alternative, A Plea: Nul Tiel Record (Doc. 95)

Plaintiff's Motion Regarding Sufficiency of an Answer; In the Alternative, A Plea: Nul Tiel Record (Doc. 95) will also be denied. Initially, the motion concerns a discovery dispute, thereby violating the Court's Rule 16 Scheduling Order. Second, the Court agrees with Defendants that Plaintiff's request for admission is in the form of a question, not a request for admission. In any event, the Court finds that Defendants adequately responded to Plaintiff's question in their response to this motion. *See* (Doc. 98). For these reasons, the Court will deny Plaintiff's motion.

## III.   Motion for Default Judgment

On November 19, 2015, Plaintiff filed a Motion for Default Judgment alleging that Defendants "Never adequately Replied to" his summary judgment motion. (Doc. 111). In the "Memorandum of Points and Authorities 'Rather than Respond'" attached to the motion, Plaintiff contends that Defendants' Response to Plaintiff's Motion for Summary Judgment (Doc. 101) was inadequate because the response specified that "rather than respond to Plaintiffs' legal meanderings, Defendants address each count as pled in Plaintiff's Amended Complaint." (*Id.* at 2). Interestingly, Plaintiff filed his Motion for Default Judgment (1) after he filed a reply to the allegedly inept response and (2) despite never contending that Defendants' response was inadequate before or during the November 5, 2015 Oral Argument on the summary judgment motion. In any event, Plaintiff's Motion for Default Judgment is denied for no less than four reasons.

First, Plaintiff violated Rule 55's two-step process by failing to obtain an entry of default from the Clerk of Court before filing his motion for default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) ("[Plaintiff] apparently fails to understand

the two-step process required by Rule 55."); *Symantec Corp. v. Global Impact, Inc.*, 559 F.3d 922, 923 (9th Cir. 2009) (noting that Rules 55(a) and (b) provide a two-step process for obtaining a default judgment). Second, Plaintiff does not provide the Court with any information as to which of his claims he wants the Court to enter default judgment upon. Plaintiff seems to be requesting that the Court enter default judgment on his motion for summary judgment. However, Plaintiff's summary judgment motion did not address any of the claims asserted in his First Amended Complaint. *See* (Doc. 88). Third, Plaintiff's motion for summary judgment violated at least four express requirements of the Local Rules of Civil Procedure for the District of Arizona. *See* LRCiv 7.1(b), LRCiv 7.2(e), LRCiv 56.1(a), and LRCiv 56.1(e). For this reason alone the Court could deny Plaintiff's summary judgment motion—even absent a response by Defendants. *See* LRCiv 7.2(i). Fourth, it is more than clear that Defendants did, in fact, respond to Plaintiff's motion for summary judgment. *See* (Docs. 101, 105).

In short, the fact that Defendants responded to *all* claims as asserted in Plaintiff's First Amended Complaint rather than "respond to Plaintiff's legal meanderings" which did not reference any of Plaintiff's asserted claims does not justify default judgment— even if all of the other deficiencies in Plaintiff's motion were resolved. Therefore, Plaintiff's Motion for Default Judgment will be denied.

## IV.    Motion to Censure

Plaintiff filed a Motion to Censure on November 16, 2015. (Doc. 110). In this motion, Plaintiff moves the Court to "Censure Defense Counsel" Michael G. Kelley ("Kelley") pursuant to Rule 11 due to an alleged misrepresentation of Plaintiff's deposition testimony. (*Id.* at 2). In what appears to be a memorandum attached to the motion, Plaintiff also requests that the Court "make the True and legal determination that: The Ownership of the road at issue is that of the Defendant Pommer, who both created it, and admittedly maintains that road to their private property." (*Id.* at 3). Kelley responded to the motion and requested that Defendants be awarded their reasonable expenses, including attorney's fees, incurred in responding to Plaintiff's motion. (Doc. 112).

### A.   Legal Standard

The "central purpose of Rule 11 is to deter baseless filings in district court" by requiring attorneys to certify that "they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Rule 11 provides that by presenting a motion to the Court, the person signing the motion "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b).

Rule 11's factual inquiry requirement is satisfied if there is "any factual basis for [an] allegation." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1377 (4th Cir. 1991). Even weak circumstantial evidence insufficient to withstand summary judgment is sufficient to establish a factual basis sufficient to withstand Rule 11. *Cal. Architectual Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987).

### B.   Analysis

Plaintiff's basis for sanctions is the following paragraph from Defendants' Contravention to Plaintiff's Separate Statement of Fact and Separate Statement of Facts in Support of Defendants' Cross-Motion for Summary Judgment (Doc. 102): "The portion of road at issue in this lawsuit is owned by ADOT." (*Id.* at 4). Plaintiff contends this paragraph misrepresents that Defendants own the road at issue, not ADOT. (Doc. 110). As evidence of this misrepresentation, Plaintiff cites a transcript of his deposition where he stated that "ADOT owns the right-of-way in fee simple; however, they grant permits to people to do things as the engineering is done and the – and they see fit." (*Id.* at 7).

Notwithstanding the lack of legal justification for Plaintiff's motion, the Court is unsure of its intended purpose. Plaintiff requests that the Court make a "legal

determination that: The Ownership of *the road at issue* is that of the Defendant Pommer."
(Doc. 110 at 3) (emphasis added). If the Court were to make such a determination,
however, at least one of Plaintiff's claims—"entering and trespass"—would be moot. In
any event, the Court denies Plaintiff's motion because he failed to adhere to the "safe
harbor" provision contained within Rule 11.

     As Plaintiff moved for sanctions against Defendants' counsel pursuant to Rule 11,
Plaintiff was required to abide by Rule 11's safe harbor requirement by serving the
motion on Defendants and allowing Defendants twenty-one days from the date of service
to withdraw or appropriately correct the "challenged paper" before filing the motion with
the Court. Fed. R. Civ. P. 11(c)(2); *see Barber v. Miller*, 146 F.3d 707, 710 (9th Cir.
1998). Because Plaintiff did not serve this motion on either Defendants or Kelley, the
Court will deny the motion. *See Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th
Cir. 2001); *Barber*, 146 F.3d at 710–11; *see also Holgate v. Baldwin*, 425 F.3d 671, 478
(9th Cir. 2005) ("We enforce this safe harbor provision strictly.").

## C.    Attorney's Fees

     Defendants request that they be awarded their reasonable expenses, including
attorney's fees, incurred to defend Plaintiff's Rule 11 motion. (Doc. 112). Rule 11(c)
provides that "[i]f warranted, the court may award to the prevailing party the reasonable
expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2); *see
also* Fed. R. Civ. P. 11 Advisory Committee Notes to the 1993 Amendments ("[T]he
court may award to the person who prevails on a motion under Rule 11—whether the
movant or the target of the motion—reasonable expenses, including attorney's fees,
incurred in presenting or opposing the motion."). Rule 11 is not "designed as a fee-
shifting provision or to compensate the opposing party," but rather to "deter sanctionable
conduct." *Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 175 (C.D. Cal.
2002). Notably, "[a]lthough Rule 11 applies to *pro se* plaintiffs, the court must take into
account a plaintiff's *pro se* status when it determines whether the filing was reasonable."
*Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994) (quoting *Harris v. Heinrich*, 919

F.2d 1515, 1516 (11th Cir. 1990).

The Court recognizes that a motion for sanctions should not be used as an alternative means for challenging a pleading, see *MetLife Bank, N.A. v. Badostain*, 2010 WL 5559693, \*9–10 (D. Id. Dec. 30, 2010), and here Plaintiff already filed a reply covering the same subject matter as that addressed in his Rule 11 motion. *See* (Doc. 103). In contrast to cases where the court has awarded attorney's fees to a party opposing a Rule 11 motion, however, Defendants have not shown that Plaintiff engaged in conduct evidencing bad faith or otherwise warranting an award of fees. *See id.* at \*8–9 (holding award of fees to party opposing Rule 11 motion warranted where motion included misstatements of law); *see also Safe–Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003) (holding award of fees to prevailing party appropriate where "motion for Rule 11 sanctions is not well grounded in fact or law, or is filed for an improper purpose"). Moreover, the Court concludes that Plaintiff's *pro se* status bears on the reasonableness of his filing. *See Warren*, 29 F.3d at 1390. Consequently, the Court will deny Defendants' request for reasonable expenses they incurred while responding to Plaintiff's motion. *See Velazquez v. Waste Mgmt. Nat'l Servs., Inc.*, 2013 WL 5076320, at \*1 (N.D. Cal. Sept. 13, 2013); *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 183 (S.D.N.Y. 2008) ("Although a prevailing non-movant may be entitled to attorneys' fees when he successfully avoids Rule 11 sanctions, fees are infrequently granted where the motion was not clearly frivolous, filed for an improper purpose, or not well-grounded in fact or law." (quoting *Goldberg v. Blue Ridge Farms, Inc.*, 2005 WL 1796116, at \*7 (E.D.N.Y. July 26, 2005))).

## V.     Motions for Summary Judgment

### A.     Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support that assertion by "citing to particular parts of

materials in the record," including depositions, affidavits, interrogatory answers or other materials, or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. Further, because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . . [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury." (citations omitted)).

At the summary judgment stage, the trial judge's function is to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.

*Liberty Lobby, Inc.*, 477 U.S. at 249–50. If the evidence is merely colorable or is not significantly probative, the judge may grant summary judgment. *Id.* Notably, "[i]t is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

### B.    Analysis

As Plaintiff does not address any specific claims in his Motion for Summary Judgment (Doc. 88) the Court will refer to the seven claims asserted in his First Amended Complaint (Doc. 18).[1] Defendants responded to the seven claims asserted in Plaintiff's First Amended Complaint and moved for summary judgment on all seven causes of action. (Doc. 101 at 6).[2]

---

[1] The Court notes that in Plaintiff's pleadings regarding the pending motions, Plaintiff failed to adhere to numerous requirements of the Local Rules of Civil Procedure for the District of Arizona. Namely, Plaintiff's pleadings violate LRCiv 7.1(b), LRCiv 7.2(e), LRCiv 56.1(a), LRCiv 56.1(b), and LRCiv 56.2(e). *See* (Docs. 88, 89, 103, 104).

Furthermore, Defendants correctly observe that nearly all of the federal authorities and state statutes cited by Plaintiff are irrelevant and do not provide Plaintiff with a private cause of action. (Doc. 101 at 4–5). For example, Plaintiff cites to A.R.S. § 13-2908, Arizona's criminal nuisance statute. Additionally, for his trespass claim, Plaintiff alleges that he has a cause of action under A.R.S. § 13-1502 & § 13-1503. (*Id.* at 4). However, these are criminal statutes, and Plaintiff does not have standing to bring criminal charges against Defendants. The Court will focus its discussion on the law most closely associated with the claims Plaintiff appears to assert.

[2] On November 23, 2015, Plaintiff filed a document titled "Plaintiffs' Surrebutal [sic] to Defendants' Reply to Plaintiffs' Response to Defendants' Cross Motion for Rule 56 Summary Judgment." (Doc. 113). The document's purported purpose is "Plaintiffs' Refutation of Defendants': Misunderstandings, Misstatements and Misrepresentations, denials. deceitful answers, ambiguities, studied evasions, Misunderstandings, fallacies, outright untruths, intentional lies, verbal frauds, erroneous statements, whole cloth fabrications, equivocations and other defense efforts designed to evade the plain facts, and to mislead the court into a miscarriage of justice." (*Id.* at 2).

As has been the case with the majority of Plaintiff's filings, the Court is left in the dark as to what authority permits Plaintiff to file such a document or what information Plaintiff seeks the Court to consider. For example, in this document, Plaintiff cites the

1

### 1.     "Entering and Trespass"

2      In the first claim found in Plaintiff's First Amended Complaint, Plaintiff asserts

3 that Defendants "did unlawfully enter [his] Permitted Construction area in and on the

4 Arizona State Highway 95 Easment [sic]." (Doc. 18 at 13; Doc. 88 at 6). Defendants

5 respond that Plaintiff does not have standing to bring a trespass claim because ADOT

6 owns the Access Road. (Doc. 101 at 7).

7      Under Arizona law, "[a] 'trespasser' is one who does an unlawful act or a lawful

8 act in an unlawful manner to the injury of the person or property of another." *MacNeil v.*

9 *Perkins*, 324 P.2d 211, 216 (Ariz. 1958) (citations omitted). Arizona law imposes

10 "liability to another for trespass . . . if he intentionally . . . *enters land in the possession of*

11 *the other*, or causes a thing or a third person to do so." *Taft v. Ball, Ball & Brosamer,*

12 *Inc.*, 818 P.2d 158, 161 (Ariz. Ct. App. 1991) (quoting Restatement (Second) of Torts

13 ("Restatement") § 158 (Am. Law Inst. 1965)) (emphasis added); *see also* Restatement §

14 163 ("One who intentionally enters land in the possession of another is subject to liability

15 to the possessor for a trespass . . . ."). Section 157 of the Restatement further explains that

16 "a person who is in possession of land" is only one who:

17     (a) is in occupancy of land with intent to control it, or
18     (b) has been but no longer is in occupancy of land with intent to control it,
      if, after he has ceased his occupancy without abandoning the land, no other
19     person has obtained possession as stated in Clause (a), or
      (c) has the right as against all persons to immediate occupancy of land, if
20     no other person is in possession as stated in Clauses (a) and (b).

21      Here, there is no dispute that ADOT owns and possesses the Access Road and

22 allows Plaintiff and Defendants to use it to access their properties. (Docs. 105 at 6; 102-1

23 at 19, 20). Plaintiff asserts, however, that ADOT Permit #99177 granted him perpetual

24

25 Ten Commandments to apparently justify entering judgment in his favor. (*Id.* at 8).

26 Plaintiff, however, is not authorized by the Federal Rules of Civil Procedure, the Local

27 Rules of Civil Procedure, or even the Ten Commandments to file a surrebuttal. Thus, the

    Court will not consider this document for purposes of summary judgment—although

28 even after the Court's review of the document, the outcome of this case remains the

same.

and exclusive possession of some portion of the Access Road. (Doc. 88 at 6). Contrary to Plaintiff's contention, the Permit did not grant him exclusive possession of any portion of the Access Road such that he obtained a perpetual right of occupancy or possession against all persons. (Doc. 102-1 at 43).[3] Rather, the Permit merely granted Plaintiff a "Permit and License" to use the road until January 24, 2007 to "access his property" and build a "15' wall to protect rocks from falling on Hwy 95." (*Id.*)[4] While ADOT, as owner and possessor of the Access Road, might have a claim for trespass against Defendants, Plaintiff does not. Because Plaintiff was not in exclusive possession of the Access Road as required for trespass, there is no triable issue for the jury, and the Court will deny

---

[3] To the extent Plaintiff contends that the Permit authorized him to build a "water drain safety feature" or change the "slope" of the Access Road and that these were the "permitted construction area[s]" that Defendants "unlawfully enter[ed]" into, the Permit—which is the only evidence before the Court evincing Plaintiff's authorization from ADOT—did not authorize Plaintiff to perform either endeavor. *See* (Doc. 102-1 at 43). Even if the Permit or some other ADOT correspondence granted Plaintiff permission to do so, Plaintiff did not offer any evidence showing that he actually constructed either feature of the Access Road or provide any legal authority that Plaintiff somehow obtained the exclusive right of possession of that portion of the Access Road if he did perform said construction. Rather, the only evidence before the Court is the Permit—which expired on January 24, 2007 and only authorized Plaintiff to use the Access Road to access his property and to build a fifteen foot wall—and various unauthenticated photographs of the Access Road. Absolutely no evidence is before the Court that suggests Plaintiff somehow obtained the right to exclude others from the right-of-way that ADOT undisputedly owns and possesses.

[4] Plaintiff asserted—for the first time—in his controverting statement of facts that the Permit had been "extended." (Doc. 104 at 4). Plaintiff, however, did not cite to any portion of the record to support this assertion. (*Id.*) The Court reviewed the record in its entirety and found no evidence that ADOT ever "extended" the Permit beyond the date listed on the face of the Permit. Nonetheless, even if ADOT did extend the period of the Permit, the Permit never granted Plaintiff an exclusive right of possession of any portion of the Access Road as required for trespass, nor did Plaintiff assert that Defendants trespassed upon the only improvement the Permit authorized Plaintiff to construct—the fifteen foot wall. (Doc. 102-1 at 43). Regardless of whether Plaintiff has—as he describes—a "legal right of access" (Doc. 104 at 4) to his property via the Access Road, the Permit simply did not endow Plaintiff with a right of possession of any portion of the Access Road such that he could exclude other members of the public from the road.

Plaintiff's Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgment.

### 2. "Destruction and Removal"

Plaintiff next contends that when Defendants destroyed the "safety 6% roadway slope and drain runoff aspects" of the Access Road, Defendants violated his due process rights under the United States Constitution and 42 U.S.C. § 1983. (Doc. 18 at 13). However, "[b]ecause a person violates § 1983 by depriving another of a constitutional right under color of state law, that section excludes from its purview purely private conduct." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). Although Defendant Sharon Pommer was a La Paz County probation officer (Doc. 101 at 10), there is no evidence before the Court to demonstrate that she requested the millings in anything but a private capacity.[5] Even if ADOT's supply of asphalt millings could be considered state action, "the mere acquiescence by a government official in the private party's conduct does not convert such private action into state action." *Rand v. Porsche Fin. Servs.*, 167 P.3d 111, 116 (Ariz. Ct. App. 2007) (citing *United States v. Coleman*, 628 F.2d 961, 963–64 (6th Cir. 1980)).

Because Plaintiff failed to establish the requisite state action, there is no disputed issue of material fact for the jury, and the Court will deny Plaintiff's Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgment. *See Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (holding that a nonmoving party may not defeat a summary judgment motion by standing on the bare allegations in the pleadings).

---

[5] Plaintiff points the Court to the September 21, 2012 letter Mrs. Pommer sent to ADOT to request asphalt millings. (Doc. 104-3 at 1). In this letter, Mrs. Pommer included her government telephone number and e-mail address. (*Id.*) The Court finds that no reasonable jury could conclude that Mrs. Pommer was acting under "color of state law" by merely including her contact information in the letter.

### 3. "Fraud and Nuisance"

#### a. Fraud

Plaintiff next asserts that Defendants brought a fraudulent legal action against him in February 2013. (Doc. 18 at 12–13). Specifically, Plaintiff claims that the February 2013 lawsuit "contained False Material statements and provably perjured statements by defendants Pommer, interalia '*We maintain the dirt road any time there is damage to the road caused by a monsoon rain storm.*' and also others in defendants Pommers' letter to ADOT." (*Id.* at 12). Defendants respond that Plaintiff failed to plead any of the elements of fraud with particularity as required by Rule 9(b). (Doc. 101 at 11).

To prove fraud, a plaintiff must establish: "(1) [a] representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) [the speaker's] intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) [the hearer's] reliance on its truth; (8) [the hearer's] right to rely thereon; and (9) [the hearer's] consequent and proximate injury." *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 412 (Ariz. Ct. App. 2014) (quoting *Nielson v. Flashberg*, 419 P.2d 514, 517–18 (Ariz. 1966)). Notably, fraud must be pled with "particularity." Fed. R. Civ. P. 9(b).

Even if Plaintiff's allegations were true, Plaintiff's claim, at best, *pled* only the first four elements of fraud. Plaintiff's claim fails to assert, much less *establish* by admissible evidence, all of the nine elements for fraud. For example, Plaintiff's claim does not allege that (1) Defendants' intended that their representation be acted upon by the listener, (2) the listener was ignorant of the representation's falsity, (3) the listener relied on the representation, or (4) the representation damaged Plaintiff. Nor does Plaintiff provide admissible evidence of any of the foregoing. Moreover, Plaintiff has not provided evidence to establish that Defendants' representation was false and material or that Defendants' knew of the representation's falsity. Consequently, because Plaintiff "fail[ed] to make a showing sufficient to establish the existence of an element essential to [Plaintiff]'s case, and on which [Plaintiff] will bear the burden of proof at trial," the

1   Court will deny Plaintiff's Motion for Summary Judgment and grant Defendants' Cross-

2   Motion for Summary Judgment. *Celotex*, 477 U.S. at 322.

**b.   Nuisance**

3

4       Plaintiff claims that Defendants created a "public nuisance" and "public hazard"

5   when they "[i]ntentionally obstructed the water drain safety feature that prevented

6   washout" on the Access Road. (Doc. 18 at 13). Defendants respond that Plaintiff has not

7   offered any evidence that Defendants caused any damage to the Access Road or

8   obstructed access to the properties reachable via the Access Road. (Doc. 101 at 12).

9       "A private nuisance is strictly limited to an interference with a person's interest in

10  the enjoyment of real property." *Armory Park Neighborhood Ass'n v. Episcopal Cmty.*

11  *Servs. in Ariz.*, 712 P.2d 914, 917 (Ariz. 1985). "A public nuisance, to the contrary, is not

12  limited to an interference with the use and enjoyment of the plaintiff's land." *Id.* Rather,

13  it is "broadly defined as an 'unreasonable interference with a right common to the general

14  public.'" *Mutschler v. City of Phoenix*, 129 P.3d 71, 77 (Ariz. Ct. App. 2006) (quoting

15  Restatement (Second) of Torts § 821B(1) (Am. Law Inst. 1979)). An "unreasonable

16  interference with a public right" include cases in which "'the conduct involves a

17  significant interference with the public health, the public safety, the public peace, the

18  public comfort or the public convenience.'" *Id.* (quoting Restatement § 821B(2)). In other

19  words, the "interference must be substantial, intentional and unreasonable under the

20  circumstances," and the "utility and reasonableness of the conduct [may be balanced] . . .

21  against the extent of harm inflicted and the nature of the affected neighborhood." *Armory*

22  *Park*, 712 P.2d at 920–21. Moreover, a public nuisance "must affect a considerable

23  number of people or an entire community or neighborhood." *Spur Indus., Inc. v. Del E.*

24  *Webb Dev. Co.*, 494 P.2d 700 (Ariz. 1972) (citing *City of Phoenix v. Johnson*, 5 P.2d 30,

25  34 (Ariz. 1938)).

26      In this case, Plaintiff simply alleges that Defendants "obstructed the water drain

27  safety feature that prevented washout" on the Access Road. (Doc. 18 at 13).

28

- 15 -

Notwithstanding any evidentiary deficiencies with Plaintiff's claim,[6] Plaintiff failed to produce any admissible evidence that Defendants' alleged actions "unreasonably interfered" with a right common to the general public, affected a "considerable number of people," or "significantly interfered" with a public right. Plaintiff's lone allegation that Defendants damaged a "water drain safety feature" is not enough to create a triable issue of fact for the jury based on a public nuisance claim. *See Far Out Prods.*, 247 F.3d at 997. Although Plaintiff does claim that Defendants "blockaded the [P]laintiff[']s property" (Doc. 88 at 11) and that "access was blocked by [D]efendant Pommers' initial [u]nlicensed construction" (Doc. 18 at 11), these assertions refer to the parties' lawsuit that was settled by the 2011 agreement. Accordingly, because there is no issue of material fact that would allow a reasonable jury to find in Plaintiff's favor, the Court will deny Plaintiff's Motion for Summary Judgment and grant Defendants' Cross-Motion for

---

[6] For example, Plaintiff did not present evidence that a "water drain safety feature" existed at all, and, even assuming a safety feature did exist, based on the mere sequence of events as outlined by Plaintiff, the Court is unsure how Defendants' alleged actions could have proximately and casually caused any damage to the Access Road, thereby affecting a right common to the general public. Specifically, Plaintiff alleges that the "water drain safety feature" was damaged by two "washout events" that were caused by Defendants. (Docs. 103 at 3; 104 at 6–7). Plaintiff claims the first washout event occurred on August 12, 2012 after Defendants placed a "handmade" obstruction on the safety drain. (*Id.*) The second washout event allegedly occurred on September 4, 2014 and was caused by Defendants' "second obstruction of Safety Drain," which appears to be in reference to Defendants spreading the asphalt millings over the lower portion of the Access Road on October 2, 2012. (*Id.*)

Initially, Plaintiff failed to present any evidence that Defendants constructed the "handmade" first obstruction of the safety drain. (Docs. 102 at 7; 102-1 at 39–41; 104-5). As to the second alleged obstruction, the "washout event" date of September 4, 2014 is nearly two full years after Defendants smoothed the surface of the Access Road and nearly eight months *after* Plaintiff filed this lawsuit in federal court. *See* (Doc. 1). If Plaintiff intended September 4, 2012, then Defendants could not have caused the damage as the undisputed evidence shows they smoothed the Access Road on September 20, 2012 and spread the millets on October 2, 2012. (Docs. 89 at 12; 102 at 6). If Plaintiff intended September 4, 2013, there is no evidence before the Court regarding any incident on that date. Consequently, Plaintiff presented no evidence that Defendants' actions created a public nuisance.

Summary Judgment. *See Celotex*, 477 U.S. at 322 (holding that summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

### 4.   "Wilful Violation of Agreement"

Plaintiff argues that he is entitled to summary judgment on what appears to be a breach of contract claim based on the parties' 2011 settlement agreement. (Doc. 18 at 14). Plaintiff's claim is based on two assertions: that Defendants (1) "[c]ontact[ed] the ADOT State agency" and (2) "arrogate[d] to themselves the onus of 'contractors' in order to re-grade and to destroy certain features and safety aspects of the Highway 95 easment [sic]." (*Id.*) Defendants contend Plaintiff has not provided evidence that Defendants' actions caused any damages. (Doc. 101 at 12).

According to the settlement agreement, "[a]ny redress of grievances involving violation of this agreement shall be *solely referred* to this Court for resolution." (Doc. 102-1 at 46–47) (emphasis added). Because the parties stipulated to bring all "grievances involving violation of [the settlement] agreement" before the Superior Court of Arizona in La Paz County, the Court will dismiss this claim without prejudice to be brought in the appropriate court as set forth by the settlement agreement. The La Paz County Superior Court is undoubtedly better suited than this Court to interpret and apply its own judgment.

### 5.   "Intentional Tort"

In Plaintiff's claim for "Intentional Tort," he appears to simply restate the allegations he asserted for "Entering and Trespass" and "Destruction and Removal." (Doc. 18 at 14). As discussed above, these claims are denied. The Court will therefore deny Plaintiff's Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgment on Plaintiff's "Intentional Tort" claim.

### 6.   "Malicious Persecution"

Plaintiff contends Defendants' February 5, 2013 lawsuit against him constituted

1    "malicious persecution [sic]" and a "frivolous legal action." (*Id.* at 15). Defendants argue

2    Plaintiff failed to establish that the proceeding terminated in his favor, was actuated by

3    malice, and lacked probable cause. (Doc. 101 at 14).

4         To prove wrongful institution of civil proceedings, Plaintiff must demonstrate

5    Defendants: (1) instituted a civil action, (2) motivated by malice, (3) begun or maintained

6    without probable cause, and which (4) terminated in his favor and (5) damaged him. *See*

7    *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 758 P.2d 1313, 1318–19 (Ariz. 1988); *Giles*

8    *v. Hill Lewis Marce*, 988 P.2d 143, 147 (Ariz. Ct. App. 1999). To show that Defendants

9    maliciously prosecuted Plaintiff, Plaintiff must show that a "reasonably prudent man" in

10   Defendants' position would not have instituted or continued the proceeding. *Hockett v.*

11   *City of Tucson*, 678 P.2d 502, 505 (Ariz. Ct. App. 1983) (quoting *McClinton v. Rice*, 265

12   P.2d 425, 431 (Ariz. 1953)).

13        Plaintiff has not presented admissible evidence to support all of the elements for

14   malicious prosecution. Specifically, Plaintiff failed to provide evidence supporting the

15   fourth and fifth elements.

16        As to the fourth element, a "mere . . . procedural or technical dismissal . . . is not

17   favorable." *Frey v. Stoneman*, 722 P.2d 274, 278 (Ariz. 1986) (citing *Jaffe v. Stone*, 114

18   P.2d 335, 338 (Cal. 1941)). Although a "termination without a trial on the merits may be

19   a favorable termination of the litigation if [the circumstances] indicate the innocence or

20   freedom from liability of the defendant," such was not the case here. *Id*. at 111 (quoting

21   *Stanley v. Superior Court*, 130 Cal. App. 3d 460, 464 (1982)). In fact, the superior court

22   initially found in Defendants' favor based on the merits, before vacating the judgment on

23   procedural grounds. (Doc. 102-1 at 69–70, 73). Consequently, Plaintiff has not

24   demonstrated that the February 2013 case terminated in his favor as required for

25   malicious prosecution.

26        Regarding the fifth element, Plaintiff failed to present admissible evidence that the

27   February 5, 2013 lawsuit damaged him in any manner. Accordingly, because Plaintiff

28   does not provide evidence for all elements of his claim, the Court will deny Plaintiff's

Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgment. *See Celotex*, 477 U.S. at 322 (holding that summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

### 7.    "Misuse of Government Office"

In Plaintiff's final claim, he asserts causes of action for misuse of government office under 18 U.S.C. § 242, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. (Doc. 18 at 16–17). Defendants argue Plaintiff does not have standing to bring charges under 18 U.S.C. § 242. (Doc. 101 at 15). Defendants further contend the other claims fail for lacking the requisite state action. (*Id.*)

Initially, 18 U.S.C. § 242 is a criminal statute and Plaintiff lacks standing to bring a criminal charge. *Cf. Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Second, § 242 requires that the deprivation of civil rights occur "under color of any law." 18 U.S.C. § 242. Throughout Plaintiff's papers, he failed to present evidence that Defendants were acting in anything other than their personal capacities. *See e.g.*, *Screws v. United States*, 325 U.S. 91, 111 (1945) (holding under 18 U.S.C. § 242 that "acts of officers in the ambit of their personal pursuits are plainly excluded."); *United States v. Giordano*, 442 F.3d 30, 43 (2d Cir. 2006) ("The fact that someone holds an office or otherwise exercises power under state law does not mean, of course, that any wrong that person commits is 'under color of law.'").[7] Finally, the statute protects those deprived of their civil rights "on account of such person being an alien, or by reason of his color, or race." 18 U.S.C. § 242. Plaintiff did not allege Defendants' actions were motivated by any of these grounds. For these reasons, Plaintiff's § 242 claim must fail.

Similarly, claims under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the

---

[7] As explained above, Mrs. Pommers' mere inclusion of her work telephone and e-mail address in her letter to ADOT does not establish a triable issue of fact for the jury.

Due Process and Equal Protection Clauses of the Fourteenth Amendment require some element of state action. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). "[P]urely private conduct, no matter how wrongful, is not within the protective orbit of section 1983. . . . In addition the protection of the fourteenth amendment may not be invoked unless the state has been involved in the deprivation of rights to some significant extent." *Ouzts v. Md. Nat'l Ins. Co.*, 505 F.2d 547, 550 (9th Cir. 1974). Again, Plaintiff has not produced any admissible evidence to demonstrate the requisite state action. The Court will therefore deny Plaintiff's Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgment on all of these claims.

**VI.   Conclusion**

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Compel Defendants' Disclosure (Doc. 94) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion Regarding Sufficiency of an Answer; In the Alternative, A Plea: Nul Tiel Record (Doc. 95) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Censure (Doc. 110) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Default Judgment (Doc. 111) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 88) is **DENIED** as to all counts in Plaintiff's First Amended Complaint (Doc. 18).

**IT IS FURTHER ORDERED** that Defendants' Cross-Motion for Summary Judgment (Doc. 101) is **GRANTED** as to counts 1, 2, 3, 5, 6, and 7 asserted in Plaintiff's First Amended Complaint (Doc. 18) and **DENIED** as to count 4.

**IT IS FINALLY ORDERED** that count 4 asserted in Plaintiff's First Amended Complaint (Doc. 18) is dismissed without prejudice to be brought in the appropriate court pursuant to the parties' 2011 settlement agreement. The Clerk of Court shall enter judgment accordingly and terminate this case.

Dated this 4th day of December, 2015.

James A. Teilborg
Senior United States District Judge